## LUCAS v BLAINE et

Ohio Appeals, 4th Dist, Pickaway Co
No. 117. Decided June 12, 1931

Abernethy & Simpkins, Circleville, and C. A. Eldon, for Lucas.

C. H. May, Circleville, for Blaine et.

LEMERT, J.

Sec 6447, GC, provides and authorizes an appeal in cases similar to the instant case, wherein it makes provision for a finding as to whether or not:

1. Is the improvement necessary?

2. Will the improvement be conducive to the public welfare?

3. Is the cost of the improvement greater than the benefits conferred?

4. Is the route, termini, or the mode of construction the best to accomplish the purpose of the improvement?

5. Are the assessments levied according to the benefits?

6. Is the award for compensation or damages just?

Trial was had upon the issues as thus made by the statute and the case was heard De Novo upon the pleadings and the evidence and resulted in a judgment in favor of the appellant and the dismissal of the petition and proceedings thereunder at the costs of the appellees. Error was prosecuted to the Court of Appeals, which reversed the judgment of the Common Pleas Court, the case was remanded to this court for further proceedings in accordance with the statute, the case was again submitted to the Court of Common Pleas upon all the questions enumerated in the statute as hereinbefore set out. A mass of testimony was taken at the first trial of the case, a transcript of which, with some additional testimony, was submitted to the Common Pleas Court upon the second trial of the case.

There is a sharp conflict in the evidence upon some of the questions, particularly as to the testimony of the Surveyor as to the practicability and feasibility of the route and plan of drainage adopted.

We have been greatly aided in the analysis of the testimony and in determination of the legal questions presented by instructive briefs of the learned counsel appearing for both parties, in the solution of the difficult and intricate questions presented and in arriving at the conclusions hereinafter stated. To discuss these many questions presented at length or to undertake to reconcile the conflicting evidence would extend this opinion beyond the bounds of propriety. We shall therefore undertake only to announce the conclusions which we have arrived at after a careful examination of the record.

Taking up the questions in the order hereinbefore stated:

"1. Is the improvement necessary?"

An examination of the evidence forces an affirmative answer to this question. In fact,

all the parties to the proceeding admit that draining the territory involved is much desired. However, we note that in a former hearing of this case in the Court of Appeals, who had substantially the same record before it, the court settled this question and stamped with finality the answer to this inquiry in considering this phase of the case, wherein Judge Mauck, speaking for the court in **Blaine v Lucas, 29 Oh Ap, page 184,** made use of the following language:

"The record shows that the lands involved need drainage. Indeed, that is not denied by those who are resisting this particular improvement. Everybody seems to realize that something ought to be done. The differences are only in what should be done and how."

The court further stating that they were clearly of the opinion that the evidence abundantly showed that the improvement is necessary.

"2. Will it be conducive to the public welfare?"

In this connection it might be stated that much stress is placed by counsel for the appellant, as is noted by their briefs, upon the subject of health as it relates to the improvement, but the public health is not the only consideration in determining whether the improvement will be conducive to the public welfare. It is only one of the elements to be considered by the court in determining whether or not the improvement ought to be made. The public convenience, however, is also a subject of consideration. The drainage of lands, rendering them suitable for agricultural purposes, and the production of food and other commodities is conducive to the public welfare. Even though the improvement may not affect in the slightest the health of the community, it would appear that reclamation of swamp lands by appropriate artificial drainage, thereby making them productive, would be as commendable in principle and as salutary in governmental policy as the reclamation of vast areas of arid lands by means of irrigation. Both are in the interest of the public welfare, notwithstanding the public health may not be affected thereby. We note again that the Court of Appeals has spoken on this question in **Blaine v Lucas, 29 Oh Ap 186,** wherein the court stated,

"The only limitation as to the number, course and location of township ditches is that they shall be conducive to the public health, convenience or welfare. The record in this case shows the desirability of improved drainage of the lands in question."

The record shows that much of the acreage involved in this improvement is low land, surrounded by a ridge of higher land; that there is no natural drainage that will adequately take care of the situation; that lower levels of the area are wet and soggy, making it impractical to successfully and profitably farm the same; and, therefore, the improvement by drainage will be conducive to the public convenience and welfare.

"3. Will the cost of the improvement exceed the benefits?"

The testimony of disinterested parties shows that the yield of crops will be increased on the Lucas land as much as twenty-five per cent, by adequate drainage, and it is shown that by reason of the size of the main ditch and laterals A and B, their fall and the splendid outlet afforded, the premises of Kathryn Lucas as well as the other lands assessed will be provided by the contemplated improvement with a primary system of drainage by which there is made available facilities for the complete tiling and draining of their lands.

The record discloses by the great weight of the evidence that the Lucas and other lands assessed by this proceeding are without adequate drainage, wet and soggy at some time in every year, and some portions thereof are wholly uncultivatable in exceptionally wet years.

It should be borne in mind that the proposed improvement is not calculated to adequately drain and make cultivatable all the assessed area. Secondary lines of tile will be required to complete the perfected scheme of drainage. But no secondary system of tiling can effect the purposes intended without first constructing the primary lines or drains proposed by this improvement. It is evident, therefore, that the restoration of these lands to a state of cultivation of which they are capable depends ultimately upon the outlets proposed, or some other outlet of equal or greater utility. In brief, the assessable benefits must be measured largely by the advantages obtained in providing an adequate outlet for the water which the land owners may turn into the main ditch and laterals by secondary ditches and drains. That is to say, the improvement will make available to the land owners assessed the opportunity of securing for themselves adequate drainage for their respective tracts of land.

The record before us shows that the land

in question is of excellent quality. Some of the witnesses testified that there is none better. It lacks drainage only to make it highly productive and exceedingly valuable. We are, therefore, of the opinion that the cost of improvement, considering the nature and character of the land, will not exceed the benefits.

"4. Is the route, termini and mode of construction the practical and correct way to accomplish the results desired?"

A great deal of the controversy in this case seems to revolve about this inquiry, and there is a sharp conflict in the testimony upon this subject. As disclosed by the record, we note that Clark Run was established as a Township Ditch about fifty-five years ago. The testimony discloses that it is a very sluggish stream, running through territory practically level, and the rise or fall is scarcely discernible except by the use of an instrument. The record discloses that it has been cleaned out a number of times and then it never afforded a sufficient outlet for the tile heretofore constructed from the Zahn lands south through the Alkire land to the Blaine line. At its best, it was inadequate. Moreover, by reason of the contour of the land along Clark's Run it obviously would be necessary to extend the main ditch for several miles with little fall in order to find a suitable outlet. We note, however, that it is claimed by the appellant that the scheme proposed will reverse the natural flow of water, which is southeasterly into Clark's Run and divert it upon her premises. That the water on the premises involved in this proceeding has been, by artificial drains, turned into Clark's Run, is admitted, and that in times of excessive rain fall the overflow is in that direction is conceded. It is therefore contended, in effect, by appellant that the main ditch should be abandoned and that a scheme should be substituted which will follow generally the line of laterals A and B, the laying of tile in Clark's Run and making the outlet several miles below the Blaine line.

From an examination of the record before us we believe the answer to the claim of appellant, who favors Clark's Run as an outlet, is that the present system of drainage of the Zahn, Burchnell and Lucas lands has long since discharged the water into Clark's Run as the outlet, and, functioning at its best, it has failed to afford adequate drainage of the lands involved here.

We note the testimony of a number of witnesses, who testified that the movement of the water naturally over these lands from what is known as the "Dennison Road" is generally southeasterly in the direction of Clark's Run, but that the surface is so flat that a number of witnesses were unable to determine whether the water was running at all, and others testified that its flow was almost imperceptible.

We note that the length of the main ditch of the proposed improvement is slightly less than one mile, and all the surveyors testify that the shorter the distance between the point of beginning and the outlet, the greater the efficiency of the ditch.

The record discloses that there will be abundance of fall in the ditch proposed, which will accelerate the discharge of the water rapidly, and there is no dispute as to the kind of tile to be used; all the witnesses agreeing that it is of good quality.

So that, viewing the testimony of the numerous witnesses in the record before us, we are of the opinion that if the Clark's Run route is to be substituted for the scheme proposed, we would be obliged to disregard the fact clearly shown that it has failed for more than fifty-five years to do what it was designed to do and what is now claimed for it, and, in addition thereto, it would be necessary to choose an outlet many times the distance from the beginning that the proposed ditch is, with a fall or grade exceedingly small, and in which the water would be discharged slowly, a disadvantage pointed out by all the surveyors. On the other hand, the proposed ditch is a short cut to an adequate outlet, has the benefit of fall and will insure better drainage.

We note that some of the engineers frown upon the plan of reversing the natural flow of water, and they say that the proposed plan is not feasible. We note, however, that other surveyors, including Mr. Overholt, an assistant professor of engineering of Ohio State University, with some years of practical experience in farm drainage, are equally as positive that the plan is not only feasible but the only practical one in this case.

We therefore find, from a diligent study of the record before us, that the route, termini and mode of construction is practical and the correct way to accomplish the results required.

So we come to the remaining questions to be considered; that is, "Are the assessments levied according to the benefits," and "is the award for compensation or damage just?" We note that the authority for and manner of making assessments for an improvement of this character is §5455 GC, and is as follows:

"The surveyor in making his estimate of the amount to be assessed to each tract of

land, and the commissioners, in amending, correcting, confirming and approving the assessments, shall levy the assessments according to benefits, and all land affected by said improvement shall be assessed in proportion as it is separately benefitted by the improvement, and not otherwise."

We note that this section uses the following language: must be **"according to benefits."** That is, the land· affected shall be assessed in the proportion as it is separately benefitted by the improvement. However, there is no hard and fast rule by which the benefits can be determined with mathematical accuracy. In the very nature of things it is a matter of forecast and estimation. The expense of the County Surveyor who made the assessments and the conclusions of the Board of County Commissioners, who amended, corrected, confirmed and approved the assessments, can not be recklessly set aside and a mere guess substituted therefor.

In the case of L. & N. R. R. Co. v Barber Asphalt Paving Company, 197 U. S., at page 433, Mr. Justice Holmes made use of the following language:

"There is a look of logic when it is said that special assessments are founded on special benefits and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source * * * . The amount of benefit which an improvement will confer upon particular lands, indeed whether it is a benefit at all, is a matter of forecast and estimate * * *. A statute like the present manifestly might lead to the assessment of a particular lot for a sum larger than the value of the benefits to the other lot. The whole cost of the improvement is distributed in proportion to area, and a particular area might receive no benefits at all, at least if its present and probable use be taken into account. If that possibility does not invalidate the act, it would be surprising if the corresponding fact should invalidate an assessment. Upholding the act as embodying a principle generally fair and doing as nearly exact justice as can be expected seems to import that if a particular case of hardship arises under it in its natural and ordinary application, that hardship must be borne as one of the imperfections of human things."

We find that the above doctrine was very nicely treated in the case of **Rogers v Johnson, Treasurer, 21 Appeals, 292.** And finally we note that whether the award for compensation and damages is just or not, is a jury issue, made so by the provisions of the statute in that regard. The appellant in the instant case, if she can show any substantial damage done her property or if it amounts to the taking of her private property, her remedy is a proceding to have determined her compensation and damages, by pursuing which she will have complete and adequate relief. So that it follows that the finding and judgment in the instant case will be for the appellees and against the appellant for all questions except the award of compensation and damages and that matter should be submitted to the consideration of a jury in accordance with the provisions of the statute, if the parties so desire it. An entry may be drawn in accordance with this opinion. The cost before the Board of County Commissioners are made a part of the costs of the improvement and the costs on appeal and on the error proceedings in this court are assessed against the appellant. Exceptions will be noted for the appellant.

LEMERT, J, SHERICK, PJ, and MONTGOMERY, J, concur.